# United States Court of Appeals
# for the Federal Circuit

---

**MOTIVA, LLC,**
*Appellant,*

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

AND

**NINTENDO CO., LTD.,** AND
**NINTENDO OF AMERICA, INC.,**
*Intervenors.*

---

2012-1252

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-743.

---

Decided: May 13, 2013

---

CHRISTOPHER D. BANYS, The Lanier Law Firm, of Palo Alto, California, argued for appellant.

CLARK S. CHENEY, Attorney, Office of General Counsel, United States International Trade Commission, of Washington, DC, argued for appellee. With him on the

brief were DOMINIC BIANCHI, Acting General Counsel, and
WAYNE W. HERRINGTON, Assistant General Counsel. Of
counsel was JAMES M. LYONS.

MARK S. DAVIES, Orrick, Herrington & Sutcliffe LLP,
of Washington, DC, argued for intervenors. With him on
the brief was KATHERINE M. KOPP. Of counsel on the brief
were E. JOSHUA ROSENKRANZ, PETER A. BICKS and ALEX V.
CHACHKES, of New York, New York, and JOSEPH S.
PRESTA and ROBERT W. FARIS, Nixon & Vanderhye, P.C.,
of Arlington, Virginia.

––––––––––––––––

Before NEWMAN, PROST, and O'MALLEY, *Circuit Judges.*

PROST, *Circuit Judge.*

Motiva, LLC ("Motiva") appeals the decision of the International Trade Commission ("Commission") that Nintendo Co., Ltd. and Nintendo of America, Inc. (collectively "Nintendo") did not violate § 337 of the Tariff Act of 1930 by importing, selling for importation, or selling certain video game systems and controllers. Because the Commission properly determined that a domestic industry does not exist nor is in the process of being established for U.S. Patent Nos. 7,292,151 ("'151 patent") and 7,492,268 ("'268 patent"), we affirm.

## I. BACKGROUND

Motiva owns the '151 and '268 patents. The '151 patent issued in November 2007 and is titled "Human Movement Measurement System." It generally relates to a "system for . . . testing and training a user to manipulate the position of . . . transponders while being guided by interactive and sensory feedback . . . for the purpose of functional movement assessment for exercise and physical rehabilitation." '151 patent abstract. The '268 patent issued in February 2009 and was a continuation of the

application for the '151. It generally relates to the same subject matter as the '151 patent.

In 2008, Motiva filed suit against Nintendo in the United States District Court for the Eastern District of Texas accusing Nintendo's Wii video game system ("Wii") of infringing the '151 patent. The case was later transferred to the United States District Court for the Western District of Washington. In June 2010, that district court stayed the case pending completion of reexamination of the '151 patent by the U.S. Patent and Trademark Office.

Subsequent to the stay order, in September 2010, Motiva filed its complaint with the Commission that gave rise to this appeal.[1] Motiva asserted that the Wii infringed the '151 and '268 patents and, therefore, that Nintendo's importation into, selling for importation into, and selling of the Wii in the United States violated Section 337 of the Tariff Act of 1930. Based on Motiva's complaint, the Commission initiated an investigation into whether Nintendo had violated Section 337.

Shortly after the Commission began its investigation, Nintendo moved for summary determination that the domestic industry requirement of Section 337 was not satisfied at the time Motiva filed its complaint with the Commission. Under Section 337, it is unlawful to import articles that infringe a valid and enforceable United States patent if "an industry in the United States, relating to the articles protected by the patent . . . exists or is in the process of being established." 19 U.S.C. § 1337(a)(2). Section 337 details how that domestic industry requirement can be satisfied.

---

[1] After the complaint was filed, the district court granted a second stay pending resolution of the Commission's investigation and all appeals.

[A]n industry in the United States shall be considered to exist if there is in the United States, with respect to the articles protected by the patent, copyright, trademark, mask work, or design concerned—

(A) significant investment in plant and equipment;

(B) significant employment of labor or capital; or

(C) substantial investment in its exploitation, including engineering, research and development, or licensing.

19 U.S.C. § 1337(a)(3).

Nintendo argued that Motiva's domestic activities failed to satisfy any of those requirements. According to Nintendo, there were no commercialized products incorporating Motiva's patented technology, and Motiva's activity aimed at developing a domestic industry for articles protected by the asserted patents consisted solely of the district court litigation against Nintendo. Nintendo asserted that litigation was not a significant or substantial investment that could satisfy the domestic industry requirement.

In February 2011, the administrative law judge ("ALJ") granted Nintendo's motion. The ALJ agreed that the patent litigation suit against Nintendo was Motiva's only activity that could be related to commercializing the technology covered by the '151 and '268 patents at the time the complaint was filed. That activity, as the ALJ saw it, was insufficient to satisfy the domestic industry requirement because it was not adequately directed toward licensing activities related to the practical application of the patents' claimed inventions. The ALJ also found that Motiva was not engaged in any licensing activities: Motiva never offered to license, never received

a request to license, and never in fact licensed either the '151 patent or the '268 patent.

On appeal, the Commission vacated the ALJ's summary determination and remanded for additional fact finding regarding Motiva's activities related to developing a domestic industry for the technology covered by the patents. It found that a genuine issue of material fact existed regarding whether Motiva's litigation efforts were—as Motiva claimed—adequate "to facilitate and hasten the practical application of the inventions of the patents at issue." J.A. 7866. According to the Commission, litigation could be relevant in a licensing effort directed at "encouraging adoption and development of the [patented] technology by bringing a product to market" and protecting the ability of a patentee to derive revenues from patented technology by engaging "potential manufacturers, investors, and licensees who were not already involved in existing production." *Id.* The Commission directed the ALJ to further explore the relationship of the Wii to Motiva's licensing efforts, determine how production-ready Motiva's technology was, and examine how Motiva's litigation related to its commercialization of the patented technology.

In November 2011, after briefing and a five-day evidentiary hearing, the ALJ once again ruled that Motiva had not shown that the economic prong of the domestic industry requirement of Section 337 was satisfied.[2] The

---

[2] The ALJ also held that the Wii did not infringe either of the asserted patents—a determination that Motiva challenges on appeal. Because that decision is not binding precedent and we affirm on other grounds, we need not—and decline to—reach its merits. Other decisions of the ALJ, including those regarding inequitable conduct, the technical prong of the industry requirement, and various invalidity defenses are not raised on appeal.

ALJ concluded that Motiva likely made substantial investments from 2003 to 2007 to commercialize the patented technology but ended those activities by January 2007 before a final product was ever produced or ever "close to being produced." Motiva's old development activities were "far too remote to be considered for purposes of demonstrating that a domestic industry exists." J.A. 7826. Thus, the ALJ found that Motiva had to rely on the district court litigation against Nintendo as its only evidence of an investment that would satisfy the domestic industry requirement.

According to Motiva, that litigation against Nintendo was "a necessary step to preserve and hasten [its] licensing opportunities, which would otherwise remain completely curtailed by the Wii's infringing presence on the market." J.A. 7830 (internal quotation marks omitted). As Motiva saw it, once Nintendo was forced to license its patents or leave the market for video-game-based motion tracking systems, potential partners would be willing to invest in and license Motiva's patented technology. It believed that the costs of litigation against Nintendo were, therefore, a substantial investment adequate to satisfy the economic prong of the domestic industry requirement. However, based on the testimony of witnesses and documentary evidence, the ALJ disagreed.

The ALJ found that the litigation costs related to the district court proceedings were not relevant to the domestic industry analysis because the litigation itself was not "in any way related to the exploitation of the patents."[3] J.A. 7831. The ALJ concluded that the Wii had no effect on Motiva's attempt to create a market for the patented technology. Regardless of the Wii, Motiva's patented technology, according to the ALJ, was not even close to

---

[3] The ALJ also noted that the '268 patent was never asserted against Nintendo in district court.

being "production-ready" at any point. J.A. 7820. Motiva's only remaining prototype of its patented technology had "exposed circuit boards, wiring, and sensors." J.A. 7819. And in its discovery responses, Motiva stated that, before the patented technology could be commercialized, contracts had to be obtained, the product had to go through final product and packaging design, and the product had to undergo beta, safety, and compliance testing. J.A. 7820.

The ALJ further found that testimony of investors and potential investors demonstrated that there was no interest in Motiva's technology prior to the release of the Wii: Motiva's last partner withdrew in 2004 and no others since that point ever showed enough interest to even examine Motiva's prototypes or patent applications. The only potential interest that the ALJ found to exist was directed at "excluding Nintendo from the market, not utilizing Motiva's patent technology" in a product. J.A. 7812.

Moreover, according to the ALJ, the Wii would not even compete with Motiva's potential products because they were in different markets. Motiva's product was an "expensive tool" designed for "exercise, athletic performance training, and physical therapy and research." J.A. 7817-19. The Wii, though, was a "relatively inexpensive video game system for home consumers" that had games for exercising but would not "compete with the expensive and sophisticated fitness product envisioned by Motiva." J.A. 7818-19.

Thus, the ALJ reasoned that the presence of the Wii—and the possibility of its removal from the market by successful litigation—did not and would not affect Motiva's attempts to commercialize its patented technology. The ALJ concluded that Motiva was not "concerned with taking swift actions to remove Nintendo from the market" through litigation; it was only interested in "extract[ing] a

monetary award either through damages or a financial settlement." J.A. 7823. The ALJ found support for this conclusion from emails between the inventors of the '151 patent discussing financial gains from litigation, Motiva's decision not to seek immediate injunctive relief from the district court, and Motiva's decision to delay filing a complaint with the Commission for more than three years after the allegedly devastating launch of the Wii. The ALJ therefore found that Motiva failed to prove that an industry for its patented technology existed or was in the process of being established: there is "no reason to believe that manufacturers of fitness and rehabilitation equipment will suddenly become interested in the [patented] technology because Nintendo [is] excluded from the market." [4] J.A. 7835.

On appeal, the Commission adopted the ALJ's decision as its final determination on the investigation.[5] It did not address the domestic industry holding in detail but did comment that the reliance on the filing date of the complaint to determine whether a domestic industry

---

[4] The ALJ also found that the size of Motiva's investments in litigation were not substantial. Because of a contingency fee arrangement, Motiva had yet to pay "any attorneys' fees or expenses related to Motiva's litigation against Nintendo" and never had to pay those costs unless Motiva obtained a recovery as a result of the litigation. J.A. 7831. Because Motiva might never pay any fees for the litigation, its investment was too "speculative" according to the ALJ, and the value of the time Motiva employees spent on the litigation—approximately $17,000—was insignificant by itself.

[5] The Commission provided some minor clarifications and vacated one portion of the ALJ's decision regarding invalidity. Those aspects of the Commission's decision are not relevant to our disposition of the case.

existed under Section 337 was not erroneous "in the context of this investigation." J.A. 7874.

Motiva filed a timely appeal of the Commission's decision.

## II. DISCUSSION

Although the question of whether the domestic industry requirement is satisfied presents issues of both law and fact, this appeal presents only factual issues which we review for substantial evidence. *See John Mezzalingua Assocs. v. Int'l Trade Comm'n*, 660 F.3d 1322, 1327 (Fed. Cir. 2011).

The Commission found—and Motiva does not dispute—that Motiva's investments in developing a domestic industry for the '151 and '268 patents were limited after 2007 to the litigation against Nintendo. Indeed, Motiva argues on appeal that its investment in that litigation satisfies the economic prong of the domestic industry requirement of Section 337. It asserts that removing the Wii from the market through litigation was essential to developing a successful "product-driven licensing business" that would encourage partners to develop and adopt its patented technology, which was "ready for a manufacturer to pick it up and incorporate it into a successful product." Appellant's Br. 44, 47.

Motiva's investment in the litigation against Nintendo could indeed satisfy the economic prong of the domestic industry requirement if it was substantial and directed toward a licensing program that would encourage adoption and development of articles that incorporated Motiva's patented technology. *See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 707 F.3d 1295, 1299 (Fed. Cir. 2013) (clarifying that efforts directed toward licensing a patent can satisfy the domestic industry requirement where they would result in the production of "goods practicing the patents"); *cf. John Mezzalingua*, 660 F.3d

at 1328-29 (discussing how the "Commission is fundamentally a trade forum, not an intellectual property forum" and holding that litigation expenses directed at preventing instead of encouraging manufacture of articles incorporating patented technology does not satisfy the domestic industry requirement of Section 337).

However, the ALJ found that Motiva's litigation against Nintendo was not directed at developing such a licensing program. Relying on extensive documentary evidence and witness testimony, the ALJ concluded that the presence of the Wii in the market had no impact on Motiva's commercialization efforts or ability to encourage partners to invest in and adopt its patented technology. And Motiva was never close to launching a product incorporating the patented technology—nor did any partners show any interest in doing so, for years before or any time after the launch of the Wii. Motiva's only remaining prototype was a product far from completion, and a multitude of development and testing steps remained prior to finalizing a product for production. Moreover, the evidence demonstrated that Motiva's litigation was targeted at financial gains, not at encouraging adoption of Motiva's patented technology. The inventors looked forward to financial gains through Motiva's litigation, not hopes of stimulating investment or partnerships with manufacturers. Motiva also never asked for a preliminary injunction from the district court, and it waited three years before seeking relief from the Commission—even though the importation of the Wii was allegedly the only obstacle to adoption of its patented technology in the market.

Thus, on the record here, substantial evidence supports the Commission's finding that Motiva's litigation against Nintendo was not an investment in commercializing Motiva's patented technology that would develop a licensing program to encourage adoption and development of articles that incorporated Motiva's patented technology. *See John Mezzalingua*, 660 F.3d at 1328 (discussing how

litigation expenses should not automatically be considered a substantial investment in licensing, even where litigation leads to a license). There is simply no reasonable likelihood that, after successful litigation against Nintendo, Motiva's patented technology would have been licensed by partners who would have incorporated it into "goods practicing the patents." *See InterDigital*, 707 F.3d at 1299.

## III. CONCLUSION

The ALJ thoroughly reviewed the evidence in this case, and the Commission adopted the ALJ's conclusion that Motiva's litigation activities did not satisfy the economic prong of the domestic industry requirement of Section 337. Because that determination is supported by substantial evidence, we affirm the Commission's finding of no Section 337 violation.[6]

---

[6] We also affirm the Commission's use of the date of the filing of Motiva's complaint in this case as the relevant date at which to determine if the domestic industry requirement of Section 337 was satisfied. *See Bally/Midway Mfg. v. U.S. Int'l Trade Comm'n*, 714 F.2d 117, 1120 (Fed. Cir. 1983) (holding that the date of filing of a complaint with the Commission was the appropriate date at which to analyze the existence of a domestic industry). Although Motiva may have been fully engaged in developing a domestic industry for its patented technology until early 2007, there is no evidence in the record relating that development activity to Motiva's efforts to establish a domestic industry at the time Motiva chose to file its complaint three years later. As the ALJ reasonably found, Motiva's old development activities did not result in production-ready technology that would have been incorporated into domestic goods practicing the patents through Motiva's licensing activities in which it was engaged at the time it filed its complaint. Motiva

**AFFIRMED**

simply has not shown that its old development activities contributed to a market that existed or was in the process of being created at the time of its complaint.